**PETITION UNDER 28 USC § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| **UNITED STATES DISTRICT COURT** | District EASTERN DISTRICT OF LOUISIANA |
|---|---|

| Name    DARRELL JARRELL | Prisoner No. 088772 | FILED Docket No.  JAN 2 3 2004 |
|---|---|---|

Place of Confinement

LOUISIANA STATE PENITENTIARY, ANGOLA, LA. 70712

LORETTA G. WHYTE
CLERK

| Name of Petitioner | Name of Respondent |
|---|---|
| DARRELL JARRELL    V. | BURL CAIN, Warden |

The Attorney General of the State of:
LOUISIANA

**04-0242**

**PETITION**

**SECT. R MAG. 6**

1. Name and location of court which entered the judgment of conviction under attack 22nd JDC, St. Tammany Parish, Louisiana 510 E. Boston St., Covington, LA 70433

2. Date of judgment of conviction August 26, 1999

3. Length of sentence 50 years (Habitual Offender)

4. Nature of offense involved (all counts) 1 Count R.S. 14:26/30 1 Count R.S. 14:27/30

5. What was your plea? (Check one)
   (a) Not guilty          X
   (b) Guilty              ☐
   (c) Nolo Contendere     ☐
   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

6. Kind of trial: (Check one)
   (a) Jury              X
   (b) Judge only        ☐

7. Did you testify at the trial?
   Yes ☐    No X

8. Did you appeal from the judgment of conviction?
   Yes X    No ☐

Fee 5.00
Process
X Dktd. OC
CtRmDep
Doc. No. 1

1

9. If you did appeal, answer the following:

    (a) Name of court Louisiana Court of Appeal, First Circuit

    (b) Result Convictions affirmed sentence affirmed on remand

    (c) Date of result March 28, 2001

    (d) Grounds raised N/A

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?

    Yes  X    No  ☐

11. If your answer to 10 was "yes", give the following information:

    (a) (1) Name of court 22nd JDC St. Tammany Parish, Louisiana

        (2) Nature of proceeding APPLICATION FOR POST CONVICTION

        (3) Grounds raised See Post-Conviction Application Attached Which Petitioner adopts and incorporates as a part of the Record in these proceedings.

        (4) Did you receive an evidentiary hearing on your petition, application or motion?
           Yes  ☐    No  X

        (5) Result Relief Denied

        (6) Date of result February 13, 2002

2

(b) As to any second petition, application or motion give the same information:

    (1) Name of court __N/A_____

    (2) Nature of proceeding_____

    _____

    (3) Grounds raised_____

    _____

    _____

    _____

    (4) Did you receive an evidentiary hearing on your petition, application or motion?
    Yes     ☐     No     ☐

    (5) Result_____

    (6) Date of result_____

(c) As to any third petition, application or motion, give the same information:

    (1) Name of court __N/A_____

    (2) Nature of proceeding_____

    (3) Grounds raised_____

    _____

    _____

    _____

    _____

    (4) Did you receive an evidentiary hearing on your petition, application or motion?
    Yes     ☐     No     ☐

    (5) Result_____

    (6) Date of result_____

(d) Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?

    (1) First petition, etc.   Yes   X    No    ☐
    (2) Second petition, etc.   Yes   ☐    No    ☐
    (3) Third petition, etc.   Yes   ☐    No    ☐

(e) If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

_____

_____

_____

12. State *concisely* every ground on which you claim that you are being held unlawfully. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting same.

**Caution:** In order to proceed in the federal court, you must ordinarily first exhaust your available  state court remedies as  to each ground on which you request action by the federal court. If you fail to set forth all grounds in  this petition, you  may be  barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted your state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.
(b) Conviction obtained by use of coerced confession.
(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
(e) Conviction obtained by a violation of the privilege against self-incrimination.
(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
(g) Conviction obtained by a violation of the protection against double jeopardy.

4

(h)   Conviction obtained by action of grand or petit jury which was unconstitutionally selected and impaneled.
(i)   Denial of effective assistance of counsel.
(j)   Denial of right of appeal.


A.   Ground one:____SEE: ATTACHED MEMORANDUM_____


Supporting FACTS (tell your story *briefly* without citing cases or law)
_____SEE: ATTACHED MEMORANDUM_____

B.   Ground two:____SEE: ATTACHED MEMORANDUM_____


Supporting FACTS (tell your story *briefly* without citing cases or law)
_____SEE: ATTACHED MEMORANDUM_____

C.   Ground three:_SEE: ATTACHED MEMORANDUM_____


Supporting FACTS (tell your story *briefly* without citing cases or law)
_____SEE: ATTACHED MEMORANDUM_____

E.   Ground Four:_SEE: ATTACHED MEMORANDUM_____


Supporting FACTS (tell your story *briefly* without citing cases or law)
_____SEE: ATTACHED MEMORANDUM_____

F.   Ground Five:__SEE: ATTACHED MEMORANDUM_____


Supporting FACTS (tell your story *briefly* without citing cases or law)
_____SEE: ATTACHED MEMORANDUM_____

G.   Ground Six:__SEE: ATTACHED MEMORANDUM_____


Supporting FACTS (tell your story *briefly* without citing cases or law)
_____SEE: ATTACHED MEMORANDUM_____

H.   Ground Seven:__SEE: ATTACHED MEMORANDUM_____


Supporting FACTS (tell your story *briefly* without citing cases or law)
_____SEE: ATTACHED MEMORANDUM_____

I.   Ground Eight:__SEE: ATTACHED MEMORANDUM_____

_____

Supporting FACTS (tell your story *briefly* without citing cases or law)
_____SEE: ATTACHED MEMORANDUM_____

J.   Ground Nine:__SEE: ATTACHED MEMORANDUM_____

_____

Supporting FACTS (tell your story *briefly* without citing cases or law)
_____SEE: ATTACHED MEMORANDUM_____

13. If any of the grounds listed in 12A,B,C, and D were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them:_____ALL CLAIMS HAVE BEEN EXHAUSTED IN THE STATE'S HIGHEST COURT_

_____

_____

14. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?
    Yes ☐   No  X

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

    (a)  At preliminary hearing_Gerald Leydecker 1001 N. Causeway Blvd._
         _Metairie, LA 70011_____

    (b)  At arraignment and plea_Same as 15(a)_____

    _____

    (c)  At trial____Same as 15(a)_____

    _____

    (d)  At sentencing_Same as 15(a)_____

    _____

    (e)  On appeal____Frank Sloan_____

    _____

    (f)  In any post-conviction proceeding __Pro Se_____

    _____

6

(g)   On appeal from any adverse ruling in a post-conviction proceeding
      _____Pro Se_____

16. Were you sentenced on more than one count of an indictment, or on more
    than one indictment, in the same court and at the same time?

    Yes  X    No  ☐

17. Do you have any future sentence to serve after you complete the sentence
    imposed by the judgment under attack?

    Yes  ☐    No  X

    (a)   If so, give name and location of court which imposed sentence to
          be served in the future:

          ___N/A_____
          _____

    (b)   Give date and length of the above sentence:_____
          _____

    (c)   Have you filed, or do you contemplate filing any petition attack-
          ing the judgment which imposed the sentence to be served in the
          future?

          Yes  ☐    No  ☐


Wherefore, petitioner prays that the Court grant petitioner relief to
which he may be entitled in this proceeding.



                              _____
                              Signature of Attorney (if any)


    I declare under penalty of perjury that the foregoing is true and
correct.

Executed on _Dec 26. 2003_
                (date)


                              _Darrell Tarrell_____
                              Signature of Petitioner


                                                                      7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

------------------------------------

NO: _____

------------------------------------

### DARRELL JARRELL,
*Petitioner,*

### VERSUS

### N. BURL CAIN, WARDEN,
Louisiana State Penitentiary;
### STATE OF LOUISIANA,
*Respondents.*

------------------------------------

## PETITION FOR WRIT OF HABEAS CORPUS

------------------------------------

## MEMORANDUM IN SUPPORT
## ON BEHALF OF:

DARRELL JARRELL, *Petitioner, Pro Se*

Respectfully submitted,

Darrell Jarrell, Pro Se
088772, C.B. - C-L-4
Louisiana State Penitentiary
Angola, Louisiana 70712

**Table of Contents**                                    **Page Number**

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii.

PETITIONER'S MEMORAMDUM  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.

JURISDICTION AND VENUE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5.

STATEMENT OF THE CASE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5.

(i).     Course of the Proceedings  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5.

(ii).    Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8.

REASONS FOR GRANTING HABEAS RELIEF  . . . . . . . . . . . . . . . . . . . . . 11.

CLAIMS RAISED FOR REVIEW  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12.

ARGUMENT OF THE CLAIMS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14.

CLAIM  I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14.

I.       The Structural Defect In The Framework Of The Trial  . . . . . . . . . . . . . . 17.

II.      The Court Erred When it Failed to Select an Impartial Jury Panel . . . . . . 21.

CLAIM  II . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22.

CLAIM  III  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23.

CLAIM IV  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29.

CLAIM V. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33.

Standard Of Review On Claims Of Ineffective Assistance Of Counsel  . . . . . . . . 37.

CLAIM VI. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38.

CLAIM VII. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41.

CLAIM VIII. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43.

CLAIM IX. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45.

Circumstantial Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46.

A Criminal Defendant's Right To Testify . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49.

Counsel's Deficient Performance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50.

The Prejudice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50.

The Effect Of Failure To Object . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55.

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58.

Table of Authorities                                                         Page Number

**Constitutional Provisions:**

LSA-Const. Art. 1, § 13 . . . . . . . . . . . . . . . . . . . . 13., 21., 29., 33., 38., 41., 43., 45.

LSA-Const. Art. 1, § 16 . . . . . . . . . . . . . . . . . . . . . . . . 12., 14., 21., 52., 56.

LSA-Const. Art. 1, § 17 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12., 14., 21.

LSA-Const. Art. 1, § 20 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11.

LSA-Const. Art. I, § 13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12.

LSA-Const. Art. I, § 2 . . . . . . . . . . . . . 12., 13., 21., 24., 29., 33., 38., 41., 43., 45.

U.S.C.A., Const. Amend. 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12.

U.S.C.A., Const. Amend. 5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12., 49., 50.

U.S.C.A., Const. Amend. 6 . . . . 12.,13.,21.,29.,33.,38.,41.,43.,45.,48.,50.,51.,53.

U.S.C.A., Const. Amend. 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12.

U.S.C.A., Const. Amend., 14 . . . 12.,13.,21.,24.,27.,29.,33.,38.,41.,43.,45.,48.,50.

**Code And Statutory Provisions:**

28 U.S.C. § 2241 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5.

28 U.S.C. § 2254(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5.

28 U.S.C. § 2254(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59.

La. C. E., Art. 701 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34.

La. C. E., Art. 704 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36.

La. C.Cr.P., art. 384 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12., 22.

La. C.Cr.P., art. 419 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12., 14., 21.

La. C.Cr.P., art. 774 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43.

La. C.Cr.P., art. 775(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12., 14., 21.

La. C.Cr.P., art. 782(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12., 14., 21.

La. C.Cr.P., art. 783 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12., 14., 21.

La. C.Cr.P., art. 796 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12., 14., 21.

La. C.E., Art. 403 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34.

La. Code Evid. Art. 607 D(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31., 32., 39.

La. Code Evid. Art. 801 D(1)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31.

La. Code Evid., Art. 105 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31., 32., 39.

La. R.S. 14:26/30 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5., 12., 22.

La. R.S. 14:27/30 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6., 12., 22.

La. R.S. 15:438 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25., 28.

La. R.S. 15:529.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7.

Pugh, Force, Rault & Triche, Handbook on Louisiana Evidence Law p. 415 (West
2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32., 40.

**Case Law Citations:**

Arizona v. Fulminante, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17., 19.

Arthur v. Bordenkircher, 715 F.2d 118 (4th Cir. 1983) . . . . . . . . . . . . . . . . . . 42.

Atwood v. Warden, 1999 WL 390852 (N.D.Cal.1999) . . . . . . . . . . . . . . . . . . 18.

Barker v. Wingo, 407 U.S. 514, 526, 92 S.Ct. 2182, 2189, 33 L.Ed.2d 102 (1972)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57.

Brecht v. Abrahamson, 507 U.S. 619, 630, 113 S.Ct. 1710, 123 L.Ed.2d 353
(1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19.

California v. Roy, 519 U.S. 2, 5, 117 S.Ct. 337, 136 L.Ed.2d 266 (1996) . . . . . 18.

Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27.

Durns v. U.S., 562 F.2d 542, 548 (C.A. 8 1977) . . . . . . . . . . . . . . . . . . . . . . . 32.

Faretta v. California, 422 U.S. at 819, 95 S.Ct. at 2533, 45 L.Ed.2d at 562 (1975)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51.

Fitzpatric v. United States, 410 F. 2d 513, 516 (1969) . . . . . . . . . . . . . . . . . . . 48.

Harris v. Warden,  La. St. Pen, 152 F.3d 430 (5th Cir. 1998) . . . . . . . . . . . . . 19.

In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) . . . . . 27., 28.

Jackson v. Virginia, 443 U.S. 307, 323-24, 99 S.Ct. 2781, 1791-92, 61 L.Ed.2d 560
(1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25., 26., 28., 29.

Johnson v. United States, 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18.

Jordan v. Hargett, 34 F.3d 310 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . 53., 54.

McDonald v. Johnson, 139 F.3d 1056, 1059-60 (5th Cir. 1998) . . . . . . . . . . . . 59.

McKaskle v. Wiggins, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18.

v.

Neder v. U.S., 119 S.Ct. 1827, 1833 n. 2 & 3 (1999) . . . . . . . . . . . . . . . . . . . . 18.

Robison v. Johnson, 151 F.3d 256, 268-269 (5th Cir. 1998) . . . . . . . . . . . . . . 59.

Rock v. Arkansas, 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49.-51., 53.

Rogers-Bey v. Lane, 896 F.2d 279, 283 (7th Cir. 1990) . . . . . . . . . . . . . . . . . . 52.

Rose v. Clark, 478 U.S. 570, 577-78, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18.

Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21.

State v. Borde, 209 La. 905, 25 So.2d 736 (1946) . . . . . . . . . . . . . . . . . . . . . . 36.

State v. Bosworth, 593 So.2d 1356 (La. App. 4 Cir. 1992) . . . . . . . . . . . . . . . 36.

State v. Breaux, 504 So.2d 1011, (La. App. 1 Cir. 1987) . . . . . . . . . . . . . . . . . 22.

State v. Butler, 563 So.2d 976 (La. App. 1 Cir. 1990) . . . . . . . . . . . . . . . . . . . 35.

State v. Caillier, 450 So.2d 43 (La. App. 3 Cir. 1984) . . . . . . . . . . . . . . . . . . . 54.

State v. Camp, 446 So.2d 1207 (La. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . 28.

State v. Chevallier, 213 La. 528, 35 So. 2d 135 (1948) . . . . . . . . . . . . . . . . . . 36.

State v. Claiborn, 483 So.2d 1301 (La. App. 4 Cir. 1986) . . . . . . . . . . . . . . . . 28.

State v. Code, 627 So.2d 1373, 1384 (La. 1993) . . . . . . . . . . . . . . . . . . . . . . . 11.

State v. Coll, 146 La. 597, 83 So. 884 (La. 1919) . . . . . . . . . . . . . . . . . . . . . . 36.

State v. Cook, 372 So.2d 1202 (La. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . 23.

State v. Cousin,  96-2973, 710 So.2d 1065 (La. 4/14/98) . . . . . . . . . . . . . 31., 39.

State v. Evans, 593 So.2d 900 (La. App. 4 Cir. 1992) . . . . . . . . . . . . . . . . . . . . 36.

State v. Fuller, 454 So. 2d 119 (La. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37.

State v. Garlepied, 462 So.2d 189 (La. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . 28.

State v. Gray, 639 So.2d 421 (La. App. 2nd Cir. 1994) . . . . . . . . . . . . . . . . . . 47.

State v. Hampton, 818 So.2d 720, 727 (La. 3/22/02 - Opinion on Limited Grant of Rehearing 6/ 7/02) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56.

State v. Harrison, 367 So.2d 1 (La. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45.

State v. Johnson, 482 So.2d 146 (La. App. 4 Cir. 1986) . . . . . . . . . . . . . . . . . . 55.

State v. Kaufman, 304 So.2d 300 (La. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . 45.

State v. Knighton, 436 So. 2d 1141 (La. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . 44.

State v. Kyles, 513 So. 2d 265 (La. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44.

State v. Mabry, No. 290523, Div. "A", January 18, 2000 . . . . . . . . . . . . . . . . . 11.

State v. Mussall, 514 So.2d 505 (La. App. 4 Cir. 1987) . . . . . . . . . . . . . . . . . . 27.

State v. Mussall, 523 So.2d 1305 (La. 1988) . . . . . . . . . . . . . . . . . . . . . 25., 26., 46.

State v. Prudholm, 446 So.2d 729 (La. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . 38.

State v. Ratcliff, 416 So. 2d 528 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37.

State v. Scott, 454 So.2d 851 (La. App. 5 Cir. 1984) . . . . . . . . . . . . . . . . . . . . . 28.

State v. Smith, 554 So.2d 676 (La. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44.

State v. Soler, 93-1042 (La. App. 5 Cir. 4/26/94), 636 So.2d 1069 . . . . . . . . . . 36.

State v. Sorina, 499 So.2d 376 (La. App. 4 Cir. 1986) . . . . . . . . . . . . . . . . . . . . 28.

State v. Storms, 406 So.2d 135 (La. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23.

State v. Sugar, 408 So. 2d 1329 (La. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44.

State v. Thomas, 750 So.2d 1114 (La. App. 4th Cir. 1999) . . . . . . . . . . . . . . . . 17.

State v. Turner, 499 So.2d 1282 (La. App. 4 Cir. 1986) . . . . . . . . . . . . . . . . . . 28.

State v. Vessell, 450 So.2d 938 (La. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28.

State v. Wheeler, 95-1628 (La. App. 4 Cir. 12/14/95), 665 So.2d 1286 . . . . . . 23.

State v. Williams, 483 So.2d 999 (La. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 47.

Strickland v. Washington, 466 U.S. 688, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37., 41., 43., 45., 54., 58.

Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19.

Suniga v. Bunnell, 998 F.2d 664, 667 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . 18.

Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed.2d 749 (1927) . . . . . . . . 18.

United States ex rel. Wilcox v. Johnson, 555 F.2d 115, 118-19 (3rd Cir. 1977)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51.

United States v Butts, 630 F. Supp 1145 (D.Me. 1986) . . . . . . . . . . . . . . . . . . 52.

United States v. Bernloeher, 833 F.2d 749, 751 (8th Cir. 1987) . . . . . . . . . . . . 52.

United States v. Cronic, 466 U.S. 648, 656 n.19 (1984) . . . . . . . . . . . . . . . . . . 41.

United States v. Diharce-Estrada, 526 F.2d 637 (5th Cir. 1976) . . . . . . . . . . . . 45.

United States v. Edwards, 897 F.2d 445, 447 (9th Cir. 1990), *cert. denied*, 498 U.S.
1000, 111 S.Ct. 560, 112 L.Ed.2d 567 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . 55.

United States v. Lamerson, 457 F.2d 371 (5th Cir. 1972) . . . . . . . . . . . . . . . . . 45.

United States v. LaRose, 459 F. 2d 361 (6th Cir. 1972) . . . . . . . . . . . . . . . . . . . 48.

United States v. Martinez, 883 F.2d 750, 756 (9th Cir. 1989) . . . . . . . . . . 52., 55.

United States v. Ortiz, 82 F.3d 1066 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . 53., 58.

United States v. Teague, 908 F.2d 752 (11 Cir. 1990) . . . . . . . . . 51., 53.-55., 58.

Vasquez v. Hillery, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) . . . . . 18.

Waller v. Georgia, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) . . . 19.,21.

West v. Wright, 931 F.2d 262, 268 (4th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . 26.

Wiley v. Sowders, 647 F.2d 642, 649 (CA 6 1981) . . . . . . . . . . . . . . . . . . . . . 41.

Wright v. Estelle, 572 F.2d 1071 at 1078 (CA. 5 Cir. 1978) . . . . . . . . . . . . . . . 51.

**Secondary Authorities:**

9 J. Wigmore, Evidence, subs. 2497 at 317 (3rd Ed.1940) . . . . . . . . . . . . . . . . . 27.

ABA Standards For Criminal Justice, 4-5.2(a)(iv) (3rd Ed. 1993) . . . . . . . . . . . 58.

Louisiana Formulary Annotated, Third Edition (1970), Volume 2, pages 223-224
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57.

McCormick on Evidence, subs. 341 at 962 (3rd Ed. 1984) . . . . . . . . . . . . 27., 34.

Model Rules of Professional Conduct, Rule 1.2(a) . . . . . . . . . . . . . . . . . . . . . . . 57.

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

---------------------------------

NO: _____

---------------------------------

DARRELL JARRELL,

*Petitioner,*

VERSUS

N. BURL CAIN, WARDEN,
Louisiana State Penitentiary;
STATE OF LOUISIANA,

*Respondents.*

## PETITION IN SUPPORT OF HABEAS CORPUS

To:   The Honorable Judge and Magistrate of the United States District Court,
Eastern District of Louisiana.

**MAY IT PLEASE THE COURT:**

This matter is before the Honorable Court on Petitioner Darrell Jarrell's

application for habeas corpus relief under **28 U.S.C. Section 2254;** and on

suggesting the entire record be reviewed, the law and memoranda submitted and

further suggesting:

1)     Petitioner was involuntarily placed in the Louisiana State Penitentiary as the

1.

result of the August 26, 1999 order of the District Court within and for the Parish of St. Tammany, Louisiana, No. 290523-2.

2)    Petitioner is being held involuntarily by Warden N. Burl Cain, at the Louisiana State Penitentiary, Angola, Louisiana, 70712.

3)    Petitioner believes that he is being deprived of his freedom for invalid and illegal reasons.

4)    There is no previous Petition or Appeal now pending in any court.

5)    Petitioner incorporates by reference the Brief in Support of Petition of Habeas Corpus and his state post-conviction application for relief, memorandums in support and all exhibits annexed thereto.

    **WHEREFORE**, Petitioner Darrell Jarrell moves this Honorable Court to grant the following relief:

a)    Accepting jurisdiction over this case;

b)    Require the respondent to answer the allegations in the Petition and the Brief in Support; and further issue such orders this Court deems appropriate;

c)    Hold such evidentiary hearings as this Court may deem necessary and appropriate;

d)    Petitioner is unable to afford counsel and would like the Federal Office of the Public Defender or other counsel appointed to represent him in these proceedings,

2.

and allow Petitioner to supplement his timely filed application for habeas corpus by him, his attorney or both.

e)   Issue an order that this Court will grant a Writ of Habeas Corpus unless the State holds a new trial within a specific time;

f)   Issue a Writ of Habeas Corpus freeing Petitioner from his unconstitutional confinement.

**WHEREFORE, IT IS PRAYED THAT:** This Honorable Court grant, issuing any such orders herein under the law and jurisprudence of this, the United States of America, that the ends of justice is served.

**Petitioner FURTHER PRAYETH NAUGHT.**

Executed this $\underline{26}$ day of December, 2003.

Respectfully submitted,

*Darrell Jarrell*

Darrell Jarrell, Pro Se
088772, C.B. - C-L-4
Louisiana State Penitentiary
Angola, Louisiana 70712

3.

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

---------------------------------

NO: _____

---------------------------------

### DARRELL JARRELL,
*Petitioner*,

### VERSUS

### N. BURL CAIN, WARDEN,
Louisiana State Penitentiary;
### STATE OF LOUISIANA,
*Respondents.*

## PETITIONER'S MEMORAMDUM IN SUPPORT OF GRANTING HABEAS RELIEF, IN ACCORDANCE WITH 28 U.S.C. § 2254.

-------------------------------------------------------------

**MAY IT PLEASE THE HONORABLE COURT:**

Appearing Personally, comes Darrell Jarrell, [hereinafter referred to as Petitioner], who respectfully sets forth his claims for relief, and prays this Honorable Court, after a full, fair review of same, issue the necessary orders for: 1) the appointment of counsel; 2) an evidentiary hearing; or 3) that petitioner be discharged from custody forthwith for the reasons set forth below:

4.

## JURISDICTION AND VENUE

Under **28 U.S.C. § 2241**, federal courts have jurisdiction to entertain a state prisoner's habeas corpus petition if his confinement is the result of a violation of federal law. Further, jurisdiction arises under **28 U.S.C. § 2254(a)**: federal judges shall entertain habeas corpus application "on behalf of a person in custody pursuant to the judgement of a state court on the ground that he is in custody in violation of the Constitution or laws and treaties of the United States."

Now: this petition is respectfully filed into the District Court for the district in which Applicant was indicted, tried and sentenced.

## STATEMENT OF THE CASE

(1).   *Course of the Proceedings*:

Petitioner was held in protective custody at 1:45 a.m. by Corporal Neal Wright (T.Tr. p. 267 ll. 27-29) July 13, 1998 in relation to a BOLO (be on the look out) issued by the St. Tammany Sheriff's Department regarding a suspicious vehicle. Petitioner was subsequently taken to the St. Tammany Sheriff's Department where he was read his Miranda Rights and placed under arrest by Detectives Juge and Franklin.

Petitioner was arraigned on the charges of conspiracy to commit first degree murder and attempted first degree murder, being violations of **La. R.S. 14:26/30**,

5.

La. R.S. 14:27/30 respectively; and entered pleas of not guilty as to each count, on the separate Bills of Information filed by the State of Louisiana. The State of Louisiana nolle prosequied the Bill of Information regarding the violation of R.S. 14:27/30.

Trial on the merits commenced August 23, 1999. Prior to voir dire, the State orally amended Count 1 to add the previously nolle prosequied charge of R.S. 14:27/30. The trial concluded August 26, 1999 with the jury returning a unanimous verdict of guilty on each count of the Bills of Information filed by the State of Louisiana.

Post-Trial Motions For Post Verdict Judgment Of Acquittal, Motion For New Trial and Motion For Appeal were filed by counsel. The Court heard and denied all of Petitioner's motions, with the exception of his motion to appeal, which was granted after sentencing on November 8, 1999 to 20 years at hard labor on count one, R.S. 14:26/30 and 30 years on count two, R.S. 14:27/30. The Court ordered these sentences to be served concurrently with each other. After sentencing, the State informed the Court of it's intent to seek Habitual Offender proceedings; and the trial court vacated Petitioner's concurrent sentences of 20 and 30 years at hard labor at that time.

Habitual Offender proceedings were held January 18, 2000. At the conclusion

of the proceedings, the court found Petitioner to be a second felony offender, and sentenced Petitioner as to count 2, R.S. 14:27/30 to an enhanced term of 50 years under the provisions of La. R.S. 15:529.1. The court sentenced Petitioner to 20 years as to count 1, R.S. 14:26/30, and ordered these sentences to be served concurrently.

Petitioner, through counsel, Frank Sloan, filed an appeal on about, April 2000. The First Circuit Court of Appeal however, found two errors patent, *i.e.*, 1) the record failed to contain the amended bill of information adding count two which was filed August 23, 1999; and 2) the trial court record failed to reflect the court's ruling on defendant's motion to reconsider sentence. The case was remanded May 18, 2000 and the trial court was ordered to correct the deficiencies in the record.

Petitioner's appellate counsel, Frank Sloan, refiled his direct appeal August 29, 2000. The First Circuit Court of Appeal, in an unpublished opinion under Docket No. 2000 KA 1739, affirmed Petitioner's convictions and sentences March 28, 2001.

In the interim and during direct appeal, Petitioner sought writs from the trial court's denial of his Motion to Quash in the First Circuit Court of Appeal. The appellate court denied writs under Docket No. 00 KW 1742 November 15, 2000. Petitioner then sought writs from the lower courts' denials to the Louisiana Supreme Court, which denied relief under Docket No. 2001-KH-0258 September 21, 2001.

7.

In October, 2001, Petitioner timely filed an application for post-conviction relief in the 22nd Judicial District Court, Parish of St. Tammany. The trial court denied relief February 13, 2002. Petitioner sought an application for writs to the Louisiana Court of Appeal February 25, 2002. The appellate court denied relief August 26, 2002 in No. 02-KW-0592. Petitioner timely filed his application for writs to the Louisiana Supreme Court September 25, 2002. The state's highest court, refusing to exercise discreationary review, rendered a one word judgment denying relief October 10, 2003.

(11).   *Statement of Facts*:

Clayton Polen and Elaine Jarrell, were involved in an elicit and adulterous love affair, prior to the divorce between Petitioner and Elaine becoming final. (T.Tr. p. 221, ll 21-26). Nonetheless, Petitioner and Polen worked out their differences, and Polen even assisted Petitioner in repairing his vehicle prior to the incident in question taking place.

During the early morning hours of July 13, 1998, at approximately 1:15 to 1:30 a.m., Andrew Mabry and Soloman Washington forced their way into Elaine Jarrell's residence at 58482 Frederick Drive, Slidell, Louisiana and repeatedly shot the victim, Clayton Polen. Soloman and Mabry left the residence, ran to the North Shore Hospital parking lot, got into Washington's vehicle, (T.Tr. p. 268, ll 9-10)

8.

and then drove this white vehicle down Military Road to Highway 190, where the two abandoned the vehicle in the cemetery parking lot.

Petitioner, Darrell Jarrell, at approximately 1:45 a.m. on July 13, 1998 was leaving the Short-Cut Bar, (which is located across the street from the cemetery parking lot and set back off the highway) after playing video-poker. Upon turning on Hwy. 190 and walking in an easterly direction towards his residence at 54350 Apple Pie Ridge Road, Slidell, Louisiana, which is located approximately a mile from the bar, Petitioner was stopped by (then Patrolman) Neal Wright, and placed in protective custody in relation to the shooting incident which occurred earlier that morning at Elaine Jarrell's house. (T.Tr. p. 267 ll. 27-29).

Soloman Washington was picked up as a suspect in the shooting incident on Highway 190 by Detectives Juge and Franklin at approximately 1:45 a.m. on July 13, 1998. Detectives Juge and Franklin, upon receiving a radio dispatch from Patrolman Wright, relocated to the parking lot of the cemetery located on Highway 190 and placed Petitioner in their vehicle, along with Washington. After arriving at the St. Tammany Parish Sheriff's Department, Petitioner and Soloman Washington were read their Miranda Rights and separated. Washington gave several "unbelievable" statements in relation to the shooting, (see Police Report -- Comments on Statement, attached hereto as Exhibit "A"); and thereafter, led the officers to the

9.

location of the pistol he had used in the shooting incident that resulted in Mr. Polen's injuries earlier that morning. After additional investigation and questioning, Washington gave statements inculpating Andrew Mabry. (T.Tr. p. 269). Acting on this information, the detectives went to Mabry's residence, read him his Miranda Rights, at which time, Mabry gave a full confession of his involvement in the shooting which had occurred earlier that morning, and led the police to the location of the pistol he himself had used. (T.Tr. p. 270). Both Washington and Mabry implicated Petitioner in the incident, albeit, their implication of Petitioner was brought about through several varied and conflicting stories, (see Police Reports attached as Exhibits "A" & "B"). In fact, Mabry testified that Petitioner had conceived the alleged plan the same night immediately prior to the morning of it's occurrence. (T.Tr. pp. 282 - 288). However Mabry also changed this testimony during cross-examination to include a period of up to three weeks prior to the shooting taking place. (T.Tr. pp. 298 - 300).

Prior to trial and voir dire commenced, the state *orally amended* the Bill of Information as to Count Number 1, to reflect the charge of attempted first degree murder which had been Nolle Prosequied by the District Attorney's Office during preliminary hearings. (T.Tr. p. 1). Petitioner was re-arraigned on this oral Bill of Information and entered a plea of not guilty.

10.

During trial, Mabry also gave several different versions of his previous statements as he testified before the jury, including a motive, different than proffered by the state, *i.e.*, the reason Polen was shot was because he was allegedly molesting someone at Elaine Jarrell's residence, and not merely due to the jealousy Petitioner was alleged to have as a result of Polen and Elaine's relationship. (T.Tr. p. 298, ll. 15-31; p. 301, ll. 10-17; pp. 301 - 303).

Additionally, Mabry testified that there existed absolutely no expectations of receiving any deals or leniency from the State or the Trial Court for his testimony which was necessary to inculpate Petitioner. (T.Tr. pp. 291, ll 22-31, 292, ll. 1; pp. 305 - 309). However on Counsel's Motion To Reconsider Sentence, Mabry's original sentence of 20 years imprisonment, 5 years probation thereafter, and if Mabry violated probation, he would have to serve an additional 20 years, was drastically reduced to a sentence of _____. (See, Reconsider Sentence Motion Transcripts and Sentencing in *State v. Mabry*, No. 290523, Div. "A", January 18, 2000).

## REASONS FOR GRANTING HABEAS RELIEF

Petitioner brings the following assignments of error before this court. In every claim herein, and in every instance of unassigned claim, *see, e.g., State v. Code*, 627 So.2d 1373, 1384 (La. 1993), petitioner asserts a violation of his right to humane treatment under **Article 1, § 20** of the state constitution. Petitioner also asserts

11.

violations of his rights under the **Fourth, Fifth, Sixth, Eighth** and **Fourteenth Amendments** to the United States Constitution, and **Article 1, §§ 2, 3, 5, 9, 12, 13, 15, 16, 17, 19, 22, 23,** and **24** of the Louisiana Constitution.

## CLAIMS RAISED FOR REVIEW

### CLAIM I

Petitioner's Jury Was Improperly Seated In Violation Of His Sixth Amendment Right To A Public Trial, By An Impartial Jury Of The State; In Violation Of His Fourteenth Amendment Right To Substantive And Procedural Due Process Of Law; In Violation Of LSA-Const. Art. I §§ 2, 3, 13, 16, 17; And In Violation Of La. C.Cr.P., Art. 419; La. C.Cr.P., Art. 775(3); La. C.Cr.P., Art. 782(A); La. C.Cr.P., Art. 783; La. C.Cr.P., Art. 796.

### CLAIM II

Petitioner Was Improperly Brought To Trial On An Orally Amended Bill Of Information Not Responsive To The Charge of Conspiracy To Commit First Degree Murder, R.S. 14:26/30 When The State Of Louisiana, Mr. Jack Hoffstadt, A.D.A. Orally Amended The Bill Of Information To Include a Previously Nolle Prosequied Charge Of Attempted First Degree Murder, R.S. 14:27/30 On August 23, 1999, The Day Of Trial, In Violation Of Petitioner's Fourteenth Amendment Rights Under The United States Constitution; La. C.Cr.P., Art. 384; La. C.Cr.P., Art. 775(3); LSA-Const. Art. I, § 2

### CLAIM III

The Evidence Is Constitutionally Insufficient To Sustain The Conviction. Hence, Petitioner's Convictions Upon Circumstantial Evidence Is Had In Violation Of Due Process Of Law Under The Fourteenth Amendment To The United States Constitution and LSA-Const. Art. I § 2.

12.

## CLAIM IV

The Trial Court Erred When Failing to Give Limiting Instructions On Impeachment Of State's Witness Mabry To The Jury, Hence Petitioner's Conviction Is Had In Violation Of His Constitutional Rights Under The Sixth And Fourteenth Amendments To The United States Constitution and LSA-Const. Art. I §§ 2, 13.

## CLAIM V.

The Trial Court Erred When Allowing a Lay Witness to Present His Opinion as to Defendant's Character/State of Mind to the Jury, Hence Petitioner's Conviction Is Had in Violation of His Constitutional Rights under the Sixth and Fourteenth Amendments to the United States Constitution and LSA-Const. Art. I §§ 2, 13.

## CLAIM VI.

Trial Counsel Became Ineffective When Failing to Request Limiting Instructions On Impeachment Of State's Witness Mabry be Given To The Jury, Hence Petitioner's Conviction Is Had In Violation Of His Constitutional Rights Under The Sixth And Fourteenth Amendments To The United States Constitution and LSA-Const. Art. I §§ 2, 13.

## CLAIM VII.

Trial Counsel Rendered Ineffective Assistance of Counsel When He Alluded To Petitioner's Guilt During Closing Arguments. Hence Petitioner's Conviction Is Had In Violation Of His Constitutional Rights Under The Sixth And Fourteenth Amendments To The United States Constitution and LSA-Const. Art. I §§ 2, 13.

13.

## CLAIM VIII.

Trial Counsel Rendered Ineffective Assistance of Counsel When He Failed To Object To The Improper Remarks of the Prosecution During Trial, Vouching For Witness Mabry's Credibility and Regarding The Duty Of The Jury During Closing Arguments. Hence Petitioner's Conviction Is Had In Violation Of His Constitutional Rights Under The Sixth And Fourteenth Amendments To The United States Constitution and LSA-Const. Art. I §§ 2, 13.

## CLAIM IX.

Trial Counsel Rendered Ineffective Assistance of Counsel When He Failed to Allow Darrell Jarrell to Testify to Certain Facts Explaining to the Jury the Reasons for His Being in the Immediate Vicinity of the Vehicle Used in the Perpetration of the Crime; Rather than Defense Counsel Improperly Testifying as to These Facts During Closing Arguments. Hence, Petitioner's Conviction Is Had In Violation Of His Constitutional Rights Under The Sixth And Fourteenth Amendments To The United States Constitution and LSA-Const. Art. I §§ 2, 13.

## ARGUMENT OF THE CLAIMS

## CLAIM I

Petitioner asserts that his jury was improperly seated in violation of his **Sixth Amendment** Right To A Public Trial, By An Impartial Jury Of The State; in violation of his **Fourteenth Amendment** Right To Substantive And Procedural Due Process Of Law; in violation of **LSA-Const. Art. I §§ 2, 3, 13, 16, 17**; and in violation of La. C.Cr.P., art. 419; La. C.Cr.P., art. 775(3); La. C.Cr.P., art. 782(A); La. C.Cr.P., art. 783; La. C.Cr.P., art. 796.

14.

On August 24, 1999, at the beginning of the second day of trial, several jurors were discovered to be reading the article surrounding the incidents of the trial, regarding the defendant, Washington, and Mabry's involvement in the shooting which was printed in the St. Tammany-Times Picayune. (T.Tr. pp. 159, 160) (See Attached Exhibit "C").

During the in-chambers hearing that followed, juror, Pete Vanwaesberge, Jr. testified he saw the article and looked over it, skimmed it (T.Tr. p. 162, ll. 15-20) and he recalled the payment of $1,000.00 and remembered the colostomy bag. These facts were mentioned in the third and sixth paragraphs of the August 24, 1999 St. Tammany Times Picayune article. (T.Tr. p. 163).

Juror, Rebbecca Yeadon, stated she noticed Washington's name and the age of Petitioner, and she also referred to the addresses listed and mentioned the witness and defendant's name. These facts appeared in the August 24, 1999 article in the second and third paragraphs. (T.Tr. pp. 164 - 166).

Juror, Joseph Stampley testified to facts which appeared in no less than the second paragraph of the August 24, 1999 article concerning Washington, Mabry and Petitioner, Jarrell. When asked if he could remain impartial (T.Tr. p. 166), Mr. Stampley answered non-responsive to the question (T.Tr. p. 167, ll. 1 - 3). However, Petitioner asserts, if Mr. Stampley did not read the article and had not seen Jarrell's name, he would not have stated to the court: "I don't know him."

15.

Juror, Mark Knoblach made mention of facts contained in the tenth paragraph of the article when testifying before the court during the in chambers hearing; and Mr. Knoblach also made mention that Petitioner's co-defendant, Washington, could receive up to 50 years in prison.

As with the rest of the jurors questioned by the court, during the in chambers hearing, as to whether or not they could be fair and impartial, Mr. Knoblach alleged that his reading of the article would not impair his ability to remain fair and impartial. Petitioner contends the subjective questions posed to all jurors by the court, could elicit no other response from the four jurors, who were tainted, and could no longer remain impartial and fair, because of the improper influence placed upon them by the extraneous outside contaminating cause by the August 24, 1999 news paper article regarding the facts of the case, for which Petitioner was on trial.

At the conclusion of the in chambers hearing, the court, Mr. Hoffstadt, counsel for the State, and Mr. Leydecker, counsel for the defendant all agreed that Juror Vanwaesberge should be dismissed from the jury (T.Tr. pp. 176 - 177, ll. 6 - 20). However, the transcript of the proceedings clearly shows that the trial court excused the alternate juror, Mr. Mark Knoblach as well. (T.Tr. pp. 192 - 193, ll. 8 - 13). This action by the trial court, impermissibly allowed a disqualified/dismissed juror, Mr. Knoblach, to take Vanwaesberge's seat on the jury panel. (T.Tr. p. 194, ll. 3 - 5).

16.

## Legal Discussion

I.   *The Structural Defect In The Framework Of The Trial:*

In the case *sub judice,* a structural defect in the trial proceedings occurred when the trial court improperly allowed a "judicially dismissed" juror, Mr. Knoblach, to remain seated on the jury, hear the evidence presented during trial, and deliberate on the merits of the case.

Applications for post conviction relief or a writ for habeas corpus involving trial errors, not structural errors, must be decided by determining whether the error had substantial or injurious effect or influence in determining the jury's verdict, not by using the harmless beyond a reasonable doubt standard. *State v. Thomas,* 750 So.2d 1114 (La. App. 4th Cir. 1999).

The question for a federal court to determine is whether the constitutional error is structural or trial error; then, **whether the error requires federal habeas relief.**

a).   **Constitutional errors** that occur during trial are divided into two categories: structural errors and trial errors. Trial errors are those ". . . which occur during the presentation of the case to the jury, and which may therefore be quantitatively assessed" in the context of the trial as a whole to determine whether they are harmless. *Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). Structural errors, on the other hand, are defects "affecting the framework

17.

within which the trial proceeds, rather than simply an error in the trial process itself."

Structural errors are "structural defects in the constitution of the trial mechanism," therefore, these errors "defy analysis by 'harmless-error' standards." *California v. Roy*, 519 U.S. 2, 5, 117 S.Ct. 337, 136 L.Ed.2d 266 (1996)(citing *Brecht v. Abrahamson*, 507 U.S. 619,629, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). If the error is characterized as structural, then defendant's criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence." *Rose v. Clark*, 478 U.S. 570, 577-78, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986). In that case, "defendant's conviction must be reversed." *Atwood v. Warden*, 1999 WL 390852 (N.D.Cal.1999); *see also Suniga v. Bunnell*, 998 F.2d 664, 667 (9th Cir. 1993).

b). ***Structural Errors:***

As quoted from *Neder v. U.S.*, 119 S.Ct. 1827, 1833 n. 2 & 3 (1999). "[I]ndeed, we have found an error to be "structural," and thus subject to automatic reversal, only in a "very limited class of cases." *Johnson v. United States*, 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)(citing *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)(complete denial of counsel); *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed.2d 749 (1927)(biased trial judge); *Vasquez v. Hillery*, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986)(racial discrimination in selection of grand jury); *McKaskle v. Wiggins*, 465 U.S. 168, 104

18.

S.Ct. 944, 79 L.Ed.2d 122 (1984) (denial of self-representation at trial); *Waller v.*

*Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (denial of public trial);

*Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993)

(defective reasonable-doubt instruction).

At n. 3: "[T]hose cases, we have explained, contain a "defect affecting the

framework within which the trial proceeds, rather than simply an error in the trial

process itself." *Fulminante*, at 310, 111 S.Ct. 1246. Such errors "infect the entire

trial process," *Brecht v. Abrahamson*, 507 U.S. 619, 630, 113 S.Ct. 1710, 123

L.Ed.2d 353 (1993), and "necessarily render a trial fundamentally unfair," *Rose*, 478

U.S. at 577, 106 S.Ct. 3101."

For an analysis of Structural errors *see Harris v. Warden,  La. St. Pen*, 152

F.3d 430 (5th Cir. 1998). The *Harris* court held that giving erroneous jury

instructions on attempted murder was subject to harmless error review; such

constitutional error was harmless; thus counsel's failure to object to the instruction

did not constitute ineffective assistance. However, the court in *Harris, Id.* at page

434; additionally and clearly illustrated the standard of review when assessing

structural defects, to wit:

**The Standard of Review, (A) Structural Error:**

> "At one time lower courts generally held that federal
> constitutional errors could never be harmless, and required
> reversal no matter how trial the defect. *See* 5 Am. Jur.2d
> *Appellate Review* § 723. Then, in 1967, the Supreme Court

held that some constitutional errors could be so insignificant that they could be deemed *harmless*. *See id.* (*citing* <u>Chapman v. California</u>, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Today, most constitutional errors are susceptible to harmless error analysis, and harmless error is the norm rather than the exception. *See id.* In fact, there is a strong presumption that constitutional errors are subject to harmless error analysis. *See* <u>Rose v. Clark</u>, 478 U.S. 570, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986).

Despite the widespread application of harmless error analysis, there are still some constitutional violations that require reversal regardless of their harm. These errors have been labeled "structural" because they involve structural defects in the criminal trial mechanism that infect the entire trial process.[1]

Structural errors stand in contrast to 'trial errors' . . . errors that occur during the presentation of the case to the jury that are susceptible to harmless error analysis because

---

[1]    In *United States v. Wiles*, 102 F.3d 1043, 1056-57 (10th Cir. 1996), *vacated sub nom. United States v. Schleibaum*, 118 S.Ct. 361, 139 L.Ed.2d 282 (1997), the Tenth Circuit gave a comprehensive list of cases in which courts have found structural error.

Examples of structural errors are exclusion of individuals from a grand jury based on race. *Vasquez v. Hillery*, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986); denial of the right to self-representation, *McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944, 950 n. 8, 79 L.Ed.2d 122 (1984); **denial of the right to a public trial**, *Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 2217 n. 9, 81 L.Ed.2d 31 (1984); **a petit jury's improper selection**, and exposure to pretrial publicity, *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); denial of the right to counsel, *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) and *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); . . . potentially biased judges, *Tumney v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927); and a constitutionally-deficient reasonable doubt instruction, *Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993)."

the error may be quantitatively assessed in the context of
the other evidence presented at trial."

Thus, Petitioner's case is on all four points with the United States Supreme

Court holding that the denial of the right to a public trial, *Waller v. Georgia*, 467

U.S. 39, 104 S.Ct. 2210, 2217 n. 9, 81 L.Ed.2d 31 (1984); and a petit jury's

*improper selection*, and exposure to pretrial publicity, *Sheppard v. Maxwell*, 384 U.S.

333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966) constitutes a structural defect, not

amenable to the harmless error analysis. As such, Petitioner's convictions must be

reversed.

II.   *The Trial Error. The Court Erred When it Failed to Select an
      Impartial Jury Panel:*

To be sure, when the trial court erred, and failed to avoid all appearances of

impropriety — by not excusing all four of these tainted jurors, reconvening voir dire

and selecting four more jurors to hear and try the case before the bar — Petitioner's

constitutional rights under the **Sixth Amendment** Right To A Public Trial, By An

Impartial Jury Of The State; **Fourteenth Amendment** Right To Substantive And

Procedural Due Process Of Law; and **LSA-Const. Art. I §§ 2, 3, 13, 16, 17** were

violated; and Petitioner's statutory rights, under La. C.Cr.P., art. 419; La. C.Cr.P.,

art. 775(3); La. C.Cr.P., art. 782(A); La. C.Cr.P., art. 783; La. C.Cr.P., art. 796

were also violated, in contravention of the laws of this State.

Therefore as a matter of both constitutional and statutory law, Petitioner's

21.

convictions must be reversed and the matter set for a new trial; or Petitioner be released from his illegal confinement forthwith.

## CLAIM II

Petitioner contends he was improperly brought to trial on an orally amended bill of information not responsive to the charge of conspiracy to commit first degree murder, **R.S. 14:26/30**, when the State Of Louisiana, Mr. Jack Hoffstadt, A.D.A. orally amended the bill of information to include a previously nolle prosequied charge of attempted first degree murder, **R.S. 14:27/30**, August 23, 1999, the day of trial, in violation of petitioner's **Fourteenth Amendment** rights under the United States Constitution; **La. C.Cr.P., art. 384; La. C.Cr.P., art. 775(3); LSA-Const. Art. I, § 2.**

On August 23, 1999 prior to trial, the Assistant District Attorney, Jack Hoffstadt orally amended and reinstated the previously nolle prosequied charge of **R.S. 14:27/30**, thus, improperly including this charge at Petitioner's jury trial. (T.Tr. p. 1)

### Legal Discussion

In *State v. Breaux*, 504 So.2d 1011, (La. App. 1 Cir. 1987), the Court reversed and remanded and vacated the guilty plea. In that case, Janey Breaux was originally charged by a bill of information with second degree battery. Absent a valid amendment of the indictment, however, State courts are without jurisdiction to

22.

proceed further. In *State v. Cook*, 372 So.2d 1202 (La. 1979), our Supreme Court has made clear, that an amendment to an indictment or information charging a new offense nonresponsive to the former charge must be in writing. Where the bill of information was in error, a correction of the error apparently was permitted to be made orally in open court (citation omitted). Also, an oral amendment in open court of an indictment to charge a responsive lesser included offense has been permitted (citation omitted).

However, in the present case, the crime of attempted first degree murder is not a responsive offense to the charge of conspiracy to commit first degree murder. The crime of attempted first degree murder contains an element not found in the crime of conspiracy to commit first degree murder. As such, the bill of information with regard to Petitioner was never amended. As a result, his conviction for attempted first degree murder must be vacated. *State v. Storms*, 406 So.2d 135 (La. 1981); *State v. Wheeler*, 95-1628 (La. App. 4 Cir. 12/14/95), 665 So.2d 1286.

Therefore, as a matter of both constitutional and statutory law, Petitioner's convictions must be reversed and the matter set for a new trial; or Petitioner be released from his illegal confinement forthwith.

## CLAIM III

Petitioner argues that the evidence is constitutionally insufficient to sustain the conviction. Hence, Petitioner's Convictions upon circumstantial evidence is had

in violation of Due Process of Law under the **Fourteenth Amendment** to the United States Constitution and **LSA-Const. Art. I § 2**.

In the instant case, there was no direct evidence linking the Petitioner to the crime. In fact, the evidence produced at trial by the State, tended to prove that other persons had committed the crime. Accordingly, the question of whether the evidence excluded every reasonable hypothesis of innocence, should be addressed.

This court *sua sponte*, can conclude, upon a review of Petitioner's 'Statement of Facts' and a review of the transcripts in this case that, the evidence assessed in its entirety, and in the light most favorable to the prosecution, are not sufficient to persuade any rational trier of fact of the petitioner's guilt beyond a reasonable doubt that, Petitioner had the specific intent to commit first degree murder, nor could any rational trier of fact find beyond a reasonable doubt, that Petitioner *attempted* to commit first degree murder.

As will be discussed *infra* in **Claim IX**, concerning Mr. Leydecker, Petitioner's trial counsel who rendered ineffective assistance of counsel when he failed to allow Darrell Jarrell to testify to certain facts explaining to the jury the reasons for his being in the immediate vicinity of the vehicle used in the perpetration of the crime. Even though Mr. Leydecker brought out the fact that Petitioner was just leaving the Short-Cut Bar at approximately 1:45 a.m. during his closing arguments, defense counsel improperly testified to these facts. Closing arguments are not evidence. To

24.

be sure, had Petitioner testified on his own behalf, his testimony would have been evidence; and his unrebuttable testimony, *i.e.*, that he left the Short Cut Bar at approximately 1:45 a.m. July 13, 1998 after playing video poker, would not have excluded every reasonable hypothesis of innocence.

### Legal Discussion

When the circumstantial evidence is afforded the full deference it is due, under the United States Supreme Court's reasoning in *Jackson v. Virginia*, 443 U.S. 307, 323-24, 99 S.Ct. 2781, 1791-92, 61 L.Ed.2d 560 (1979), the evidence does not exclude every reasonable hypothesis of innocence. See *State v. Mussall*, 523 So.2d 1305 (La. 1988), *affirmed*, (credibility, jury, circumstantial evidence, **La. R.S. 15:438**). Credibility choices made by the jury *are not* immune from review simply because the record tends to support each element of the crime. When circumstantial evidence is used to prove the commission of an offense, **La. R.S. 15:438** requires that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of evidence". In circumstantial evidence cases, when the jury reasonably rejects the hypothesis on innocence offered by the defendant in his own testimony, "that hypothesis fails and the defendant is guilty, unless there is another hypothesis which raises a reasonable doubt." In *West*, the Court stated:

> "The very existence of the *Jackson* test presupposes that juries accurately charged on the elements of a crime and on the strict burden of persuasion to which they must hold the prosecution, nevertheless 'may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt.' (The test) was adapted to provide an additional safeguard against the possibility, and was to give added assurance that guilt should never be found except on a rationally supported 'state of near certitude'."

*West v. Wright*, 931 F.2d 262, 268 (4th Cir. 1991), *reversed on other grounds*, 112 S.Ct. 2482, ___ U.S. ____, 120 L.Ed.2d 225 (1992)(*quoting Jackson v. Virginia*, 443 U.S. at 315, 99 S.Ct. at 2786); See: *State v. Mussall*, 523 So.2d 1305, 1309-10 (La. 1988).

Consideration of *all* the facts concerning this case should guide this court's decision. In the case *sub judice*, Petitioner asserts that due process has been violated, and a pro se, post-conviction litigant, is entitled to relief, if a conviction has been obtained on the basis of insufficient evidence. See: *Jackson*, at 321, 99 S.Ct. at 2790. (Evidence is insufficient if from it no rational factfinder could conclude beyond a reasonable doubt that the defendant committed the crime with which he or she is charged.) *Jackson*, at 319, 324, 99 S.Ct. at 2789, 2791-92. If, in other words, the state of the evidence is such that a reasonable juror would necessarily have a doubt about the defendant's guilt, and that doubt is not based on fancy or on whim, but on reason, *Jackson*, at 317, 99 S.Ct. at 2788, then, the defendant cannot constitutionally be found guilty. *Jackson*, at 324, 99 S.Ct. at 2791-92.

26.

As in Jarrell's case, "A determination in federal collateral review, that a state court conviction by jury verdict was not supported by constitutionally sufficient evidence is one to be made with special caution and anxiety." *West v Wright*, 931 F.2d at 270. As in *West*, reversal of a the jury verdicts is required.

The United States Supreme Court has explicitly held that the Due Process Clause of the **Fourteenth Amendment** protects each person accused of a crime against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The ancient demand for a higher degree of persuasion in criminal proceedings and the virtually unanimous acceptance of the reasonable doubt standard reflect a profound judgment about the way in which law should be enforced and justice administered. **McCormick on Evidence,** subs. 341 at 962 (3rd Ed. 1984); 9 J. Wigmore, **Evidence,** subs. 2497 at 317 (3rd Ed.1940); *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968).

Ultimately, all the evidence in the record linking Petitioner to the crimes for which he stood trial, was purely circumstantial. Considering this fact, the rationality of the testimony supporting a conviction is tremendously important. Therefore, applicant submits that the rationale set forth in *State v. Mussall*, 514 So.2d 505 (La. App. 4 Cir. 1987) should guide this Honorable Court in reviewing this case.

27.

Under the *Mussall*, rationale, the rationality of the evidence supporting the conviction was the issue to be decided in determining whether the *Jackson*, *supra*, standard had been met. See also, *State v. Sorina*, 499 So.2d 376 (La. App. 4 Cir. 1986); *State v. Claiborn*, 483 So.2d 1301 (La. App. 4 Cir. 1986) (where the verdict is clearly contrary to the evidence); *State v. Vessell*, 450 So.2d 938 (La. 1984); *State v. Turner*, 499 So.2d 1282 (La. App. 4 Cir. 1986); *State v. Scott*, 454 So.2d 851 (La. App. 5 Cir. 1984) (where the sole evidence of guilt is internally contradictory); *State v. Garlepied*, 462 So.2d 189 (La. 1984); *State v. Camp*, 446 So.2d 1207 (La. 1984) (where the Court held the sufficiency of evidence is a question of law although the determination of whether the evidence is sufficient to support a conviction necessarily involves a review of the record).

**La. R.S. 15:438** provides the rule as to circumstantial evidence:

> "... assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence."

Additionally, Petitioner argues: the prosecution cannot at this late date, attempt to accomplish with this court, detailed alternatives that do not support the trial court records, when their case was first tried before this court. As the Supreme Court has long taught, "[I]t is the duty of the State to establish . . . guilt beyond a reasonable doubt." *In Re Winship*, 397 U.S. 358, 362, 90 S.Ct. 1068, 1071, 25 L.Ed.2d 368 (1970) (*quoting Leland v. Oregon*, 343 U.S. 790, 802-803, 72 S.Ct.

28.

1002, 1009-10, 96 L.Ed. 1302 (Frankfurter, J., dissenting). Such guilt has not been established in this case, and as a consequence, petitioner's right to due process has been violated.

In the case *sub judice*, not only did the State fail to prove every element essential to sustain conviction — the evidence also tends to prove the guilt of other persons — for which Petitioner has been convicted.

The First Circuit Court of Appeal deviated from the judicial norm in Petitioner's case: ignoring counsel's Motion For Post Verdict Judgment of Acquittal and failed to examine the record under the sufficiency of the evidence as required by *Jackson, supra.*

Hence, petitioner's conviction is had in violation of his Constitutional Rights under the **Sixth** and **Fourteenth Amendments** to the United States Constitution and **LSA-Const. Art. I §§ 2, 13**, and Petitioner is entitled to the relief sought in this post-conviction proceeding.

### CLAIM IV

Petitioner vies that the trial court erred when failing to give limiting instructions on impeachment of state's witness Mabry To the jury, hence petitioner's conviction is had in violation of his Constitutional Rights under the **Sixth** and **Fourteenth Amendments** to the United States Constitution and **LSA-Const. Art. I §§ 2, 13**.

29.

During trial, state's witness Andrew Mabry, testified that Petitioner, Washington and himself allegedly hatched the plan to kill Clayton Polen during the evening hours of July 12, 1998. Mabry further testified that Petitioner offered him and Washington one thousand dollars to shoot Polen; and testified he intended to kill Polen. (T.Tr. pp. 282 - 287). Mabry offered Petitioner's jealousy as being the motive (T.Tr. p. 288); and testified there were no deals of leniency made by the prosecution for his testimony (T.Tr. p. 291, ll. 22 - 31). The prosecution then improperly vouch-safed Mabry's testimony (T.Tr. pp. 291, l. 32 - 292, l. 1).

On cross-examination, Mabry changed his testimony as to the amount of money he had been offered (T.Tr. pp. 295 - 296); changed his story concerning the motive (T.Tr. p. 298, ll. 15- 31); changed his testimony from intending to kill Polen to merely wounding him (T.Tr. p 301, ll. 10 - 17); changed his testimony regarding the time the plan to kill Polen had been discussed (T.Tr. p. 303); and testified that he had no expectations concerning any deals of leniency with the State (T.Tr. pp. 305 - 309).

The testimony of Mabry is pregnant with contradictions and inconsistencies, of which were clearly brought out by counsel for the defense. However, counsel seemingly fell asleep after the arduous task of impeaching Mabry's testimony through his prior statements given to the police. Petitioner's counsel, Mr. Leydecker, failed to request the trial court to give limiting instructions to the jury regarding

30.

impeachment. But even more striking is that the trial court *sua sponte* failed to give instructions to the jury on impeachment, in order that the jury could better evaluate the testimony of the prosecutions, albeit suspect, star witness.

Legal Discussion

La. Code Evid. Art. 801 D(1)(a) classifies as non-hearsay a prior statement of a witness at trial that is inconsistent with the witness' trial testimony and was given under oath at the preliminary examination *or* prior trial of the accused. This classification, of course, has very limited applicability. In this case, however, Mabry, the state's star witness, gave a prior unsworn statements to the police that were inconsistent with his trial testimony.

**La. Code Evid. Art. 607 D(2)** permits the introduction of a prior inconsistent statement, even though it is inadmissible hearsay, for the limited purpose of attacking the credibility of a witness. Although such evidence is admissible for impeachment, the Louisiana Supreme Court has steadfastly recognized that "when a witness other than the defendant is impeached by the admission of a prior inconsistent statement incriminating the defendant, the statement is admissible only on the issue of credibility. . . ." *State v. Cousin*, 96-2973, 710 So.2d 1065 (La. 4/14/98).

This long standing jurisprudential rule is further buttressed by **La. Code Evid., Art. 105**, which provides in part as follows:

> When evidence which is admissible as to one party
> or for one purpose but not admissible as to another party
> or for another purpose is admitted, **the court,** upon,
> request **shall restrict the evidence to its proper scope
> and instruct the jury accordingly.**

*See also* Pugh, Force, Rault & Triche, *Handbook on Louisiana Evidence Law* p. 415

(West 2000), recognizing that ". . . prior inconsistent statements and evidence

contradicting the witness' testimony, is admissible when offered solely to attack the

credibility of a witness unless the court determines that the probative value of the

evidence on the issue of credibility is substantially outweighed by the risks of undue

consumption of time, confusion of the issues, or unfair prejudice." La. C.E., **Art.**

**607 D(2).**

As noted above, **La. C.E., Art. 105** instructs that the trial court **"shall"**

instruct the jury regarding the proper scope and manner in which they are to view

evidence once a witness has been successfully impeached. Additionally, the use of

a *sua sponte* instruction can be a useful device for cutting off attacks on evidence

rulings on appeal. See *Durns v. U.S.*, 562 F.2d 542, 548 (C.A. 8 1977).

In the case *sub judice*, the trial court erred by failing to give a limiting

instruction on impeachment. This failure of the trial court, coupled with the

prosecutor's improper vouching for Mabry's credibility, allowed the jury to

impermissibly use Mabry's questionable trial testimony as substantive evidence of

Petitioner's guilt.

As such the trial court's failure to instruct the jury on the manner in which impeachment evidence should be viewed, prejudiced petitioner during the trial, in that it allowed the jury to improperly assess the credibility of state's witness Mabry. It cannot be said that, the Mabry's incredulous testimony, coupled with the improper vouching of his truthfulness by the prosecutor, did not affect the out come of the verdict. Therefore, Petitioner contends his convictions must be reversed.

## CLAIM V.

Petitioner suggests that the trial court erred when allowing a lay witness to present his opinion as to defendant's character/state of mind to the jury, hence petitioner's conviction is had in violation of his Constitutional Rights under the **Sixth** and **Fourteenth Amendments** to the United States Constitution and **LSA-Const. Art. I §§ 2, 13**.

During trial, state's witness Shannon Buel, testified as to his opinion regarding Petitioner's state of mind, several months prior to the shooting of Clayton Polen. (T.Tr. pp. 228 - 229, ll. 1 - 6). Buel additionally testified to the ultimate fact, albeit once again, in the form of his opinion, stating that it was apparent that Petitioner carried out his threat against Polen. (T.Tr. p. 229, ll. 12 - 18). Buel additionally testified as to his opinion regarding Petitioner's character; and did not reply

33.

responsively to the question proffered by the state. (T.Tr. p. 232, ll. 13 - 20).

On cross-examination, Mr. Leydecker, counsel for the defense, questioned Buel as to his possible bias, motives or interests in testifying; and counsel questioned Buel, regarding his employer, Detective Juge, who was involved in the arrest of Petitioner and investigated the shooting of Polen.

Nonetheless, in the case *sub judice*, when Buel testified — improperly as a lay person giving expert opinion testimony — regarding his opinion of Petitioner's state of mind; character; and to the ultimate fact at issue; the trial court erroneously failed to instruct the jury to completely disregard any opinions this state's witness might have, even though counsel's objection was sustained on at least three occasions during Buel's testimony before the jury.

### Legal Discussion

**La. Code Of Evidence, Art. 701 provides:**

> If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are:
>
> (1)   Rationally based on the perception of the witness; and
>
> (2)   Helpful to a clear understanding of his testimony or the determination of fact in issue.

Of course, as with other evidence, the admissibility of opinion testimony, whether lay or expert, is subject to the balancing test of **La. C.E., Art. 403**. See C.

34.

McCormick, **On Evidence**, § 11 at 29 (3d ed. 1984).

In the case *sub judice*, Buel testified to a lay opinion completely beyond his ken. This state witness' testimony regarding Petitioner's state of mind and his character was made without any rationally based perception.  Additionally, state witness Shannon Buel, was not trained in the various fields of psychiatry or psychology, therefore, the jury should have been instructed to disregard Buel's lay opinions in this area.

In **State v. Butler**, 563 So.2d 976 (La. App. 1 Cir. 1990), the court held similarly that:

> ". . . testimony . . . would not have been helpful to determination of issue of defendant's sanity, as necessary for admission as opinion by lay witness."

In fact, the rule restricting lay testimony to facts within the layman's knowledge is intended not only to promote integrity of the factfinding process — by insuring that a witness does not testify as to matter beyond the scope of his experience — but also to avoid encumbering the trial with superfluous testimony. In other words, if a witness' opinion is not based on common knowledge, or is not grounded in some special training or experience, he has nothing to contribute to the jury.  In this case, Shannon Buel had no rationally based perception of Petitioner's character or state of mind which could be based on common knowledge.  Therefore the trial court erred by failing to instruct the jury to disregard Buel's impermissible

35.

lay-opinion testimony. See *State v. Coll*, 146 La. 597, 83 So. 884 (La. 1919).

### La. Code Of Evidence, Art. 704. Opinion on ultimate issue - provides:

> Testimony in the form of an opinion or inference otherwise admissible is not to be excluded solely because it embraces an ultimate issue to be decided by the trier of fact. However, in a criminal case, an expert witness shall not express an opinion as to the guilt or innocence of an accused.

As previously stated, state witness Shannon Buel during his testimony, impermissibly gave his lay opinion regarding the ultimate fact issue to be decided by the jury. (T.Tr. p. 229, ll. 12 - 18). Louisiana jurisprudence has consistently held this to be reversible error. *State v. Chevallier*, 213 La. 528, 35 So. 2d 135 (1948); *State v. Borde*, 209 La. 905, 25 So.2d 736 (1946); *State v. Soler*, 93-1042 (La. App. 5 Cir. 4/26/94), 636 So.2d 1069; *State v. Bosworth*, 593 So.2d 1356 (La. App. 4 Cir. 1992); *State v. Evans*, 593 So.2d 900 (La. App. 4 Cir. 1992) (opinion on ultimate fact of defendant's guilt improperly usurps function of jury).

Therefore state witness Buel's statement to the effect that Petitioner "would have liked to have taken revenge on the person who was being with her." (T.Tr. p. 228 ll. 31-32). And, in response to the state's question of whether or not his speaking with Petitioner did any good, which elicited Buel's response: "Apparently not. I'm here today." (T.Tr. p. 229, ll. 12 - 18), improperly usurped the function of the jury. The trial court erred in failing to instruct the jury to disregard Buel's

36.

testimonial inference to the ultimate fact, *i.e.*, that Petitioner shot Polen. Therefore reversible error occurred even though counsel vehemently lodged repeated objections to the impermissible lay opinion testimony being improperly elicited by the prosecution in this case. Hence, Petitioner's convictions, as a matter of right, must be reversed.

### *The Standard Of Review On Claims Of Ineffective Assistance Of Counsel:*

A claim of ineffective assistance of counsel is assessed by utilizing the two prong test set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 688, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984), and adopted by the State of Louisiana in *State v. Fuller*, 454 So. 2d 119 (La. 1984).

The defendant must show that the attorney's performance was deficient, and that the deficiency prejudiced him. There must be a showing that there is a reasonable probability that counsel's error undermined the proper functioning of the adversarial process. *State v. Ratcliff*, 416 So. 2d 528 (1982). The United States Supreme Court has defined this reasonable probability to be a "probability sufficient to undermine confidence in the outcome" of the proceeding. *Strickland*, 104 S.Ct. at 2068. While the issue of ineffective assistance of counsel is more properly addressed in the trial court where a full evidentiary hearing can be held. In cases where specific incidents have been pointed out and a prima facie case made out by

37.

the record, an appellate court may render a disposition on the alleged **Sixth Amendment** violations committed by trial counsel, *see, e.g., State v. Prudholm*, 446 So.2d 729 (La. 1984); *State v. Ratcliff, supra.*

## CLAIM VI.

Petitioner argues that his trial counsel became ineffective when failing to request limiting instructions on impeachment of state's witness Mabry, be given to the jury. Hence petitioner's conviction is had in violation of his Constitutional Rights under the **Sixth** and **Fourteenth Amendments** to the United States Constitution and **LSA-Const. Art. I §§ 2, 13.**

During trial, state's witness Andrew Mabry, testified that Petitioner, Washington and himself allegedly hatched the plan to kill Clayton Polen during the evening hours of July 12, 1998. Mabry further testified that Petitioner offered him and Washington one thousand dollars to shoot Polen; and testified he intended to kill Polen. (T.Tr. pp. 282 - 287). Mabry offered Petitioner's jealousy as being the motive (T.Tr. p. 288); and testified there were no deals of leniency made by the prosecution for his testimony (T.Tr. p. 291, ll. 22 - 31). The prosecution then improperly vouch-safed Mabry's testimony (T.Tr. pp. 291, l. 32 - 292, l. 1).

On cross-examination, Mr. Leydecker effectively impeached Mabry, who changed his testimony as to the amount of money he had been offered (T.Tr. pp. 295 - 296); changed his story concerning the motive (T.Tr. p. 298, ll. 15- 31);

38.

changed his testimony from intending to kill Polen to merely wounding him (T.Tr. p 301, ll. 10 - 17); changed his testimony regarding the time the plan to kill Polen had been discussed (T.Tr. p. 303); and testified that he had no expectations concerning any deals of leniency with the State (T.Tr. pp. 305 - 309).

Even though Mabry's testimony is pregnant with contradictions and inconsistencies, counsel seemingly fell asleep after impeaching Mabry's testimony through his prior statements given to the police. Petitioner's counsel, Mr. Leydecker, failed to request the trial court to give limiting instructions to the jury regarding impeachment.

### Legal Discussion

**La. Code Evid. Art. 607 D(2)** permits the introduction of a prior inconsistent statement, even though it is inadmissible hearsay, for the limited purpose of attacking the credibility of a witness. Although such evidence is admissible for impeachment, the Louisiana Supreme Court has steadfastly recognized that "when a witness other than the defendant is impeached by the admission of a prior inconsistent statement incriminating the defendant, the statement is admissible only on the issue of credibility. . . ." *State v. Cousin*, 96-2973, 710 So.2d 1065 (La. 4/14/98).

This long standing jurisprudential rule is further buttressed by **La. Code Evid., Art. 105**, which provides in part as follows:

39.

> When evidence which is admissible as to one party
> or for one purpose but not admissible as to another party
> or for another purpose is admitted, the court, **upon
> request,** shall restrict the evidence to its proper scope and
> instruct the jury accordingly.

*See also* Pugh, Force, Rault & Triche, ***Handbook on Louisiana Evidence Law*** p. 414-
16 (West 2000).

As noted above, **La. C.E., Art. 105** instructs that the trial court **"shall"**
instruct the jury regarding the proper scope and manner in which they are to view
evidence once a witness has been successfully impeached.  However, in the case *sub
judice,* Petitioner's counsel, after successfully impeaching state's witness -- Mabry --
rendered ineffective assistance of counsel by failing to request a limiting instruction
on impeachment being given to the jury.

Petitioner was prejudiced by counsel's deficient performance because the trial
court did not give a limiting instruction on impeachment; which would have been
required under **La. C.E., Art. 105.** Thus because of counsel's deficient performance,
the lack of a limiting instruction by the trial court, coupled with the prosecutor's
improper vouching for Mabry's credibility, allowed the jury to impermissibly use
Mabry's trial testimony as substantive evidence of Petitioner's guilt.

It cannot be said that, the Mabry's incredulous testimony, coupled with the
improper vouching of his truthfulness by the prosecutor, did not affect the out come
of the verdict.  Petitioner contends he has met his burden in this specific claim of

40.

ineffective assistance of counsel as required by *Strickland, supra*; therefore, his convictions must be reversed.

## CLAIM VII.

Petitioner suggests his trial Counsel rendered ineffective assistance of counsel when he alluded to petitioner's guilt during closing arguments. Hence Petitioner's conviction is had in violation of his Constitutional Rights under the **Sixth** and **Fourteenth Amendments** to the United States Constitution and **LSA-Const. Art. I §§ 2, 13.**

During closing arguments, Mr. Leydecker stated:

> Mr. Polen obviously thinks Darrell's involved . . . .
>
> The state wants to believe that Darrell Jarrell was involved with that, **in spite of the obvious guilt that everyone was going to say Darrell Jarrell had.**

(T.Tr. p. 332, ll. 5 - 14).

### Legal Discussion

When a defendant has chosen to plead "not guilty," his attorney "may not admit his client's guilt. . . ." *Wiley v. Sowders*, 647 F.2d 642, 649 (CA 6 1981). "Unquestionably, the constitutional right of a criminal defendant to plead 'not guilty,' or perhaps more accurately not to plead guilty, entails the obligation of his attorney to structure the trial of the case around his client's plea." *Id.* at 650. *See also* **United States v. Cronic**, 466 U.S. 648, 656 n.19 (1984) ("even when no theory

41.

of defense is available, if the decision to stand trial has been made, counsel must hold the prosecution to its heavy burden of proof beyond a reasonable doubt.")

Although statements made by attorneys in closing arguments are not evidence, nevertheless, for all practical purposes, counsel's admission of guilt on behalf of his client denied petitioner his constitutional right to have his guilt or innocence decided by the jury. Petitioner in pleading not guilty, was entitled to have the issue of his guilt or innocence presented to the jury as an adversarial issue. Counsel's complete concession of petitioner's guilt nullified the adversarial quality of this fundamental issue. *Wiley*, 647 F.2d at 650. *See also Arthur v. Bordenkircher*, 715 F.2d 118 (4th Cir. 1983) (defendant was denied effective assistance of counsel when counsel consented to jury instructions in which the judge told that the defendant had previously been convicted for the same murder).[2]

Petitioner argues: it cannot be said that counsel's impermissible allusion to his guilt did not contribute to the jury verdicts rendered in this case. Petitioner

---

[2]    *State v. Harbison*, 337 S.E.2d 504 (N.C. 1985) ("counsel's admission of the defendant's guilt during the closing arguments to the jury is per se prejudicial error"), *cert. denied*, 476 U.S. 1123 (1986); *People v. Hattery*, 488 N.E.2d 513 (Ill. 1985), *cert. denied*, 478 U.S. 1013 (1986); *State v. Wiplinger*, 343 N.W.2d 858 (Minn. 1984) ("if a defense counsel impliedly admits a defendant's guilt . . . the defendant should be given a new trial even if it can be said that the defendant would have been convicted in any event"); *People v. Fisher*, 326 N.W.2d 537, 539 (Mich.App. 1982); *Wiley v. State*, 517 So.2d 1373 (Miss. 1987) (although it may be strategically prudent to concede certain facts, no attorney should state in oral argument to a jury that the client who has pleaded not guilty is in fact guilty).

42.

contends he has met his burden in this specific claim of ineffective assistance of counsel as required by **Strickland, supra**; therefore, his convictions must be reversed.

## CLAIM VIII.

Petitioner asserts his trial Counsel rendered ineffective assistance of counsel when he failed to object to the improper remarks of the prosecution when the state vouched for Mabry's credibility during trial and the prosecutor's remarks regarding the duty of the jury during closing arguments. Hence Petitioner's conviction is had in violation of his Constitutional Rights under the **Sixth** and **Fourteenth Amendments** to the United States Constitution and **LSA-Const. Art. I §§ 2, 13.**

During closing arguments, the State of Louisiana improperly informed the jury of it's belief in Petitioner's guilt and of their "solemn duty . . . to do the right thing". (T.Tr. p. 356, ll. 1 - 6).

### Legal Discussion

In the case **sub judice**, Petitioner contends that counsel was ineffective, for failing to objecting to the prosecutions inflammatory closing arguments or moving for a mistrial when the improper closing arguments made by the state were nothing more then a plebiscite on crime and gauged for the sole purpose of inciting the jury against him.          "Argument of counsel shall not appeal to prejudice. La. C.Cr.P. **art., 774.** The prosecutor may not turn closing argument into a plebiscite on crime.

43.

*State v. Sugar*, 408 So. 2d 1329 (La. 1982).  The prosecutor's closing argument were improper at several points, but defense counsel, — unlike 'competent counsel, acting within the professional norms' — failed to object.  The principal issue is whether the improper remarks in closing argument require the setting aside the conviction and sentence.  The reviewing court must determine whether the remarks contributed to the verdict.  *State v. Knighton*, 436 So. 2d 1141 (La. 1983); *State v. Kyles*, 513 So. 2d 265 (La. 1987).  In *State v. Smith*, 554 So.2d 676 (La. 1989).  The Louisiana Supreme Court held:

> "[I]t is highly improper and prejudicial for a prosecutor to turn his argument to the jury into a plebiscite on crime or to refer to the consequences to society of the jury's verdict. State v. Kyles, supra: State v. Bates, 495 So.2d 1262 (LA. 1986), cert denied, 481 U.S. 1042, 107 S.Ct. 1986, 95 L.Ed.2d 826 (1987); State v. Sugar, 408 So.2d 1329 (La. 1982; State v. Barrow, 410 So.2d 1070 (La. 1982), cert denied, 459 U.S. 852, 103 S.Ct. 115, 74 L.Ed.2d 101 (1982); State v. Messer, 408 So.2d 1354 (La. 1982); State v. Hayes, 364 So.2d 923 (La. 1978). Predictions as to the consequences of an acquittal on lawlessness in the community go beyond the scope of the issue in the trial.

*Id* at 684.

Additionally the prosecutor's expression to the jury in his belief — of Petitioner's guilt — is error.  *See Smith, ibid.* at 681 (reversible error for the prosecutor to express his belief in the guilt of the accused, or the credibility of a key witness, where doing so implies that he has additional knowledge or information

44.

about the case which has not been disclosed to the jury.); *State v. Kaufman*, 304 So.2d 300 (La. 1974); *State v. Harrison*, 367 So.2d 1 (La. 1979); *see also United States v. Diharce-Estrada*, 526 F.2d 637 (5th Cir. 1976); *United States v. Lamerson*, 457 F.2d 371 (5th Cir. 1972).

Therefore, Mr. Leydecker's failure to object to the state's highly prejudicial and improper remarks during closing, constitutes a claim of ineffective assistance of counsel. Petitioner asserts that he has met his burden, as required by *Strickland, supra*; therefore, his convictions must be reversed.

## CLAIM IX.

Trial counsel rendered ineffective assistance of counsel when he failed to allow Darrell Jarrell to testify to certain facts explaining to the jury the reasons for his being in the immediate vicinity of the vehicle used in the perpetration of the crime; rather than defense counsel improperly testifying as to these facts during closing arguments. Hence, petitioner's conviction is had in violation of his Constitutional Rights under the **Sixth** and **Fourteenth Amendments** to the United States Constitution and **LSA-Const. Art. I §§ 2, 13**.

At the close of the trial, during defense counsel's closing arguments, Mr. Leydecker stated his theory that the co-defendants, Washington and Mabry used his client as a scape-goat. (T.Tr. p. 339, ll. 12 - 32). The Assistant District Attorney, Mr. Hoffstadt, objected to the defense counsel, Mr. Leydecker, testifying for his client. (T.Tr. p. 340, ll. 14 - 21). Again, during closing, Mr. Leydecker stated his

theory as to why Jarrell was in the immediate vicinity of the suspects vehicle. (T.Tr. p. 346, ll. 9 - 30).[3] Mr. Hoffstadt again objected to defense counsel's interjecting of evidence that was not before the jury.  The trial court sustained the prosecutor's objection. (T.Tr. p. 347, ll. 6 - 7).

Defense counsel continued in an attempt to put forth his defense theory, showing why Mr. Jarrell was walking down the street. (T.Tr. p. 347, ll. 9 - 22). Louisiana jurisprudence clearly holds that arguments of counsel are not evidence therefore, the jury could not consider anything Mr. Leydecker said on behalf of his client as evidence.   Therefore, Mr. Leydecker rendered ineffective assistance of counsel when he refused to allow Mr. Jarrell — over Petitioner's objections — to testify to his knowledge of the facts, prior to resting the defense's case.

## Legal Discussion

### Circumstantial Evidence:

In **State v. Musall**, 523 So.2d 1305 (La. 1988), the Louisiana Supreme Court affirmed the Fourth Circuit's findings and held:

> "Credibility choice made by the jury are not immune from review simply because the record tends to support each element of the crime.  When circumstantial evidence is used to prove the commission of an offense, La. R.S. 15:438 requires that: 'assuming every fact to be proved that the evidence tends to prove, in order to convict, it

---

[3]   "Snake's Place" was the new name of the Short-Cut bar, where Mr. Jarrell had been playing Video Poker during the early morning of July 13, 1998.

46.

must exclude every reasonable hypothesis of evidence'."

In circumstantial evidence cases, when the jury reasonably rejects the hypothesis of innocence offered by the defendant in his own testimony, "that hypothesis fails and the defendant is guilty, unless there is another hypothesis which raises a reasonable doubt." In *State v. Williams*, 483 So.2d 999 (La. 1986), the Louisiana Supreme Court reversed, holding that there was insufficient evidence and ordered the defendant discharged. In *Williams*, the only evidence about the victim's intent to harm defendant was proffered by the defendant at trial, and all the evidence demonstrated defendant's fear for his safety; defendant was headed toward his own house to avoid a confrontation when Garfield appeared between defendant and defendant's house. The Supreme Court held the homicide was justifiable and was committed in self-defense.

In verity, had defense counsel allowed Mr. Jarrell to take the stand, as in *Williams, supra.* the jury would have been able to judge and weigh Mr. Jarrell's credibility along with the highly suspect testimony of state's witness Mabry, who's testimony alone, inculpated Jarrell during the trial. See, *State v. Gray*, 639 So.2d 421 (La. App. 2nd Cir. 1994) where the court held that the evidence was insufficient to support conviction of simple burglary; even if defendant's testimony that his truck was out of service on date when he allegedly stole wood burning stove was discounted and testimony given by all other witnesses was accepted as true; the only

47.

evidence connecting defendant with offense was witness' testimony that he saw defendant coming out of victim's driveway with what appeared to be barbecue grill in back of his truck.

In circumstantial evidence case, mere fact that inferences to be drawn are consistent with guilt is insufficient to support a guilty verdict. ***United States v. LaRose***, 459 F. 2d 361 (6th Cir. 1972). As said by the court of appeals for the Fifth Circuit in ***Fitzpatric v. United States***, 410 F. 2d 513, 516 (1969):

> ". . . in a circumstantial evidence case the inference to be drawn from the evidence must not only be consistent with guilt but inconsistent with every reasonable hypothesis of innocence."

Therefore, had Petitioner been allowed to take the stand and testify to his where-abouts and the reasons thereof on the night in question, Petitioner's testimonial evidence would have been taken into consideration by the jury. To be sure, had Mr. Jarrell been allowed to testify, there is a reasonable probability that "any rational trier of fact" would have found the evidence insufficient to convict him of the crime of attempted first degree murder.

However, because counsel attempted to "testify" for Petitioner during his closing arguments, coupled with the trial court's instructions to the effect that "Arguments of Counsel are not evidence", Petitioner was denied his **Sixth Amendment** right to effective assistance of counsel and his rights to a fair trial as envisioned by the guarantees of the **Fourteenth Amendment** to the United States

48.

Constitution.

### *A Criminal Defendant's Right To Testify:*

The United States Supreme Court in ***Rock v. Arkansas***, 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987), considered the issue of whether an evidentiary rule which prohibited the admission of hypnotically refreshed testimony. The Court suggested such testimony, . . . under all circumstances, violated a defendant's constitutional right to testify in his own behalf. The Court further suggested that criminal defendants have a right to testify in their own behalf under the due process clause of the **Fourteenth Amendment**, the compulsory process clause of the **Sixth Amendment** and, the privilege against self-incrimination in the **Fifth Amendment** of the United States Constitution. The Court intimated that while this right is not without limitation, restrictions placed on a defendant's constitutional right to testify by a State's evidentiary rules, may not be arbitrary or disproportionate to the purpose they are designed to serve. Moreover, the Court held:

> "Logically included in the accused's right to call witnesses whose testimony is "material and factual to the defense," United States v. Valenzuela-Bernal, 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982), is a right to testify himself, should he decide it is in his favor to do so. In fact, the most important witness for the defense in many criminal cases is the defendant himself. There is no justification today for a rule that denies an accused the opportunity to offer his own testimony. Like the truthfulness of other witnesses, the defendant's veracity, which was the concern behind the original common-law rule, can be tested adequately by cross-examination. See

49.

generally: Western, The Compulsory Process Clause, 73
Mich.L.Rev. 119-120 (1974).

*Rock*, 107 S.Ct. At 2709.

### Counsel's Deficient Performance:

On the 26th day of August , 1999, Petitioner was convicted by an eleven
person jury. With this claim, Petitioner evidences that, his lawyer's performance was
constitutionally deficient; and that he was the recipient of an unfair trial, and
consequently, an unfair verdict.

Herein, Mr. Jarrell, will satisfy his burden of proving that relief should be
granted by clearly showing how these errors entered and sowed the seeds of prejudice
by the specific facts of the criminal proceedings brought and held against him.

### The Prejudice:

Petitioner contends that even if the evidence at trial was sufficient to convict
him, his conviction must be reversed because it was obtained in violation of his **Fifth,
Sixth,** and **Fourteenth Amendment** rights to testify in his own behalf. Specifically,
Petitioner argues that his attorney knew from the very beginning that he wanted to
explain his actions to the jury, that he continued to make his desire known to his
attorney, and that his attorney made the final decision to rest the defense case
August 24, 1999, without consulting him; without allowing him to testify in direct
contravention of his desire to testify.

50.

> "To deny a defendant the right to tell his side of the story
> from the stand dehumanizes the administration of justice.
> I cannot accept a decision that allows a jury to condemn to
> death or imprisonment a defendant who desires to speak,
> without ever having heard the sound of his voice."

*Wright v. Estelle*, 572 F.2d 1071 at 1078 (CA. 5 Cir. 1978) (Godbold, J., dissenting).

The multiple constitutional sources of Petitioner's right to testify in *Rock*, alone suggest its fundamental importance in our adversary system. Furthermore, the Court's discussion of the **Sixth Amendment** as a source for this right gives an important insight into its inherently personal nature. The Court noted that the **Sixth Amendment** "grants to the accused **personally** the right to make his defense." *Rock*, (quoting: *Faretta v. California*, 422 U.S. at 819, 95 S.Ct. at 2533, 45 L.Ed.2d at 562 (1975)). The Court reasoned that "an accused's right to present his own version of events in his own words" is "[e]ven more fundamental to a personal defense than the right of self-representation." *Rock*.

The Court of Appeal, Eleventh Circuit in *United States v. Teague*, 908 F.2d 752 (11th Cir. 1990) held that "[a] defendant's right to testify is fundamental and personal to the defendant, such that it may not be effectively waived by counsel against the defendant's will. Thus in doing so, joined four other circuits that have explicitly held that the defendant's right to testify is fundamental and personal, and cannot be waived against an accused's will by his attorney. *United States ex rel.*

51.

*Wilcox v. Johnson*, 555 F.2d 115, 118-19 (3rd Cir. 1977); *Rogers-Bey v. Lane*, 896 F.2d 279, 283 (7th Cir. 1990); *United States v. Bernloeher*, 833 F.2d 749, 751 (8th Cir. 1987); *United States v. Martinez*, 883 F.2d 750, 756 (9th Cir. 1989); *see also*, *United States v Butts*, 630 F. Supp 1145 (D.Me. 1986).

In Louisiana, this personal right is clearly written in the State Constitution of 1974, **Article I, § 16**, which reads:

> An accused is entitled to confront and cross-examine the witnesses against him, to compel the attendance of witnesses, to present a defense, **and to testify in his own behalf.**

Additionally in Louisiana:

> "[T]he accused shall enjoy the right... to have compulsory process for obtaining witnesses in his favor."

Underlying this clause is nothing less than the right of the accused to offer "his defense" at his "public trial" - to show the jury and the world that he is <u>not</u> <u>guilty</u> of the "infamous" and "criminal" conduct of which he stands "accused." This defense can begin with vigorous questioning of state witnesses and evidence under the letter and spirit of the Confrontation Clause; but reaches full bloom in the Compulsory Process Clause right to present witnesses and <u>evidence of his own testimony</u>. To be sure, the Clause explicitly speaks only of compelling witnesses, but surely the rights to present witnesses who volunteer, and present physical evidence, follow *a fortiori*. If Jarrell, in order to show his innocence, is generally empowered to drag a human

52.

being, against their will, into the courtroom to tell the truth, surely he must also enjoy an included right to present truthful evidence by personal testimony that in no way infringes on another human being's autonomy. This included right is plainly presupposed by the Compulsory Process Clause; the entire innocence-protecting and truth-seeking structure of the **Sixth Amendment** and; constitutional criminal procedure generally, makes no sense without it.

Throughout the entire trial Petitioner fully expected to testify. However, his counsel abruptly rested the case <u>not</u> inquiring whether Petitioner acquiesced to his decision of not allowing his client (Jarrell) to testify. The fundamental constitutional right to testify is granted to the defendant personally and not to his counsel. *Rock, supra.; Jordan v. Hargett*, 34 F.3d 310 (5th Cir. 1994); *United States v. Teague*, 953 F.2d 1525, 1532 (11th Cir.) (on rehearing en banc):

> We now reaffirm that a criminal defendant has a **fundamental** constitutional right to testify in his or her own behalf at trial. This right is personal to the defendant and cannot be waived either by the trial court or by defense counsel. <u>cert. denied</u>, ___ U.S. ___, 113 S.Ct. 127, 121 L.Ed.2d 82 (1992).

*Jordan* at 312.

Although the decision to testify at trial involves a strategic choice, that choice belonged to Jarrell, and not to his attorney. *See United States v. Ortiz*, 82 F.3d 1066 at n.2 (D.C. Cir. 1996); *Teague*, (on rehearing en banc). Simply put,

Petitioner's lawyer did not protect his right to testify in his own behalf. "[T]his right to testify in one's own behalf is a carefully protected right." *See State v. Caillier*, 450 So.2d 43 (La. App. 3 Cir. 1984).

The *Teague* court held that "a criminal defendant has a fundamental constitutional right to testify on his own behalf, that this right is personal to the defendant, and that the right cannot be waived by defense counsel, 953 F.2d at 1535, it concluded that a claim that the defendant was denied his right to testify should be reviewed as an ineffective assistance counsel claim under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." *Teague*, at 1534. However, the court in *Jordan* rendered an alternative opinion, intimating the following:

> We cannot agree with this approach. First, we believe that the right of a defendant to testify on his own behalf is a fundamental constitutional right entirely separate from his right to counsel. Second, in our view, treating a claimed denial of the defendant's right to testify as an ineffective assistance of counsel claim ignores recognition of the right as one personal to the defendant which can never be waived by counsel, competent or not.

Because the Court of Appeal, Fifth Circuit, very well may have jurisdiction over this matter at some future date, Petitioner urges this Court to decide this case in accord with *Jordan*, at 316.

54.

**The Effect Of Failure To Object.**

Neither Jarrell nor his counsel made a record in the state trial of Jarrell's desire to testify. In similar circumstances, some courts have concluded that the defendant waived his right to testify. *See e.g.*, **United States v. Edwards**, 897 F.2d 445, 447 (9th Cir. 1990), *cert. denied*, 498 U.S. 1000, 111 S.Ct. 560, 112 L.Ed.2d 567 (1990); **United States v. Martinez**, 883 F.2d 750, 760 (9th Cir. 1989), vacated on other grounds, 928 F.2d 1470, *cert. denied*, 501 U.S. 1249, 111 S.Ct. 2886, 115 L.Ed.2d 1052 (1991). In **Jordan** and **Teague**, the courts noted otherwise, holding:

> We do not believe that a defendant's failure to make a record of his desire to testify against his counsel's wishes is always fatal. Unlike many trial errors asserted in habeas proceedings, this alleged error by its very nature is one where the defendant and his lawyer are necessarily at odds with each other. We think it unrealistic to expect that defense counsel will always bring his attorney-client dispute to the attention of the trial court. Likewise, we believe that a rule requiring the defendant personally to make such a record is inappropriate. We agree with the reasoning of the panel opinion in **Teague** at 908 F.2d 759-60.

**Jordan** at 314.

**Teague** suggested: "[I]n the interests of decorum and the smooth administration of justice, defendants who speak out of turn at their own trials are quickly reprimanded, and sometimes banned from the courtroom, by the court."

The best example this writer could find was the case of **State v. Johnson**, 482

55.

So.2d 146 (La. App. 4 Cir. 1986). Defense counsel advised the defendant that it was in his best interest not to testify, but the defendant rejected his advise and wanted to testify. Counsel expressed the circumstances of this situation to the court at a bench conference, and stated that he had intended to have the defendant testify. Following the bench conference the court asked counsel if they were ready for closing argument, and received an affirmative response. Defendant personally objected. The court told him that he could either be quiet or be gaged or be removed from the courtroom. Defendant indicated that he would rather be removed and specifically stated that he had a right to testify. He stated, "I have a right to take the stand. I want the record to reflect that." The judge had the defendant removed from the courtroom. In addition, rendered sentence in absentia. The Fourth Circuit Court of Appeal held that Louisiana Constitution of 1974, **Article I, § 16** provides "an accused is entitled to testify in his own behalf." Nothing in the record justifies, nor are we sure that anything could justify, the trial court's refusal to allow defendant to exercise this constitutional right. The court in *Johnson*, reversed this defendant's conviction and remanded to the district court for retrial. See also *State v. Hampton*, 818 So.2d 720, 727 (La. 3/22/02 - Opinion on Limited Grant of Rehearing 6/7/02).

Petitioner asserts that absent instruction on the substantive rules, he lost a fundamental, personal and protected right in the shuffle at trial. There is no evidence in the trial record to support a claim that Jarrell ever agreed with his

attorney's decision denying him the right to testify. Nor can the State point to any sentence or fragment thereof that resembles a positive waiver by Jarrell of his constitutional right. The most basic rule of construction in waiver cases is that, **a personal relinquishment cannot be inferred from the defendant's silence.** *See Barker v. Wingo*, 407 U.S. 514, 526, 92 S.Ct. 2182, 2189, 33 L.Ed.2d 102 (1972).

Petitioner was not informed that he may have overridden his attorney's judgment and interrupted the trial. Therefore it cannot be fairly said that Mr. Jarrell knowingly or willingly accepted the **unconstitutional proceedings** afforded him.

Lastly, Petitioner suggests that the Louisiana Bar Association has a pre-prepared form so as to prevent this very error from occurring. *See* **Louisiana Formulary Annotated**, Third Edition (1970), Volume 2, pages 223-224, which clearly lays out what would constitute a proper, intelligent and knowing waiver of one's right to testify at trial.

The uncertainty in this area could have been avoided, if counsel would have obtained a signed statement from Jarrell, or if the trial court would have conducted a colloquy and obtained, outside of the jury's hearing, a statement on the record from Petitioner, that he was aware of his right to testify and has chosen, voluntarily, to waive that right. *Jordan*, at 314-315; **Louisiana Formulary Annotated**, Third Edition (1970), Volume 2, pages 223-224 (footnote at 25).

The **Model Rules of Professional Conduct**, Rule 1.2(a) and comments

57.

(1995), provides: ("In a criminal case, the lawyer shall abide by the client's decision ... whether the client will testify."); **ABA Standards For Criminal Justice, 4-5.2(a)(iv)** (3rd Ed. 1993) (whether to testify in his or her one behalf is a decision to be made by the accused after full consultation with counsel.). *United States v. Ortiz*, at 1070 (footnote 10); *Teague*, at 1522-1534.

Defense counsel neglected the vital professional responsibility of ensuring that Jarrell's right to testify was protected and that any waiver of that right was knowing and voluntary. *Strickland*, 104 S.Ct., at 2064. Therefore, Jarrell, places no greater responsibility on Mr. Leydecker, than is already required by the ethical standards of the legal profession.

As can be clearly shown from the argument herein, Petitioner has met the two prong standard set forth by the United States Supreme Court in *Strickland, supra*. Therefore, Petitioner asserts that, but for Mr. Leydecker's unprofessional errors and deficient performance, there is a reasonable probability that the out come of the trial would have been different, and that Petitioner would have been acquitted of the charge of attempted first degree murder.

## CONCLUSION

Petitioner asserts that his convictions have been clearly obtained in contravention of his constitutionally guaranteed rights under both the United States and Louisiana Constitution of 1974 (as amended) and, Petitioner further asserts, his

58.

convictions were improperly obtained in violation of the Laws and Statutory Provisions of the State of Louisiana and the United States Constitution; as set forth in the foregoing Memorandum In Support of Habeas Relief.

**WHEREFORE, PETITIONER, DARRELL JARRELL PRAYS:** That this Honorable Court, for the reasons set forth above, with arguments and jurisprudence of law in support thereof; after a full, fair and equitable review of his claims: issue all necessary orders causing relief to be granted, as mandated under the provisions of the law and constitution — ordering Petitioner, Darrell Jarrell to be discharged forthwith from his illegal custody and confinement.

**Alternatively, PETITIONER, DARRELL JARRELL PRAYS:** That this Honorable Court, order an evidentiary hearing to be held as Petitioner has easily met the threshold requirements and has pleaded facts with 'reasonable particularity' which entitle him to an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2); *McDonald v. Johnson*, 139 F.3d 1056, 1059-60 (5th Cir. 1998); *Robison v. Johnson*, 151 F.3d 256, 268-269 (5th Cir. 1998).

Respectfully submitted this 26 day of Dec_____, 2003.

Darrell Jarrell

Darrell Jarrell, Pro Se
088772, C.B. - C-L-4
Louisiana State Penitentiary
Angola, Louisiana 70712

59.

# SEE RECORD FOR
# EXHIBITS
# OR
# ATTACHMENTS
# NOT SCANNED